# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

Plaintiff,

v.

HERACLIO SANCHEZ-RODRIGUEZ,

Defendant.

Case No. 3:23-cr-00090-RRB-KFR-1

## REPORT AND RECOMMENDATION RE MOTION
## TO ADDRESS CONDITIONS OF CONFINEMENT

At Docket 187, Defendant Heraclio Sanchez-Rodriguez filed a Motion to Address Conditions of Confinement ("Motion") in which he suggested that several issues related to his pretrial detention were hindering his "ability to have confidential communication with his lawyers, to review discovery, and to prepare for trial," in violation of the Sixth Amendment.[1] The Court allowed Defendant to develop the record at an evidentiary hearing. Having considered the testimony, exhibits, and briefing, the Court concludes that Defendant has failed to prove that his conditions of confinement have infringed on his Sixth Amendment rights. Therefore, the Court recommends that Defendant's Motion be **DENIED**.

## I.    BACKGROUND[2]

### A.  Procedural History

On June 20, 2023, the government indicted Defendant and several co-conspirators on one count of drug trafficking conspiracy.[3]  On October 18, 2023, the government obtained a subsequent indictment charging Defendant with 11 counts relating to his alleged role in the

---

[1] Docket 187 at 1–2.

[2] The parties' litigation over Defendant's Motion has been extensive.  In this report and recommendation, the Court describes only those events that are significant to its assessment of the merits of Defendant's Motion or that provide helpful context.

[3] Docket 4 (Case No. 3:23-cr-00051-RRB-KFR).  The government ultimately indicted 18 co-conspirators in the initial criminal case.  *See* Docket 189.

drug conspiracy.[4] This indictment severed Defendant and two co-defendants from the original group of indicted co-conspirators. On May 23, 2024, the government obtained a superseding indictment that added two new counts against Defendant; one of those counts related to an alleged attempt to obstruct justice in this matter by creating fake investigative reports while in custody.[5]

On August 4, 2023, Defendant filed a motion challenging his conditions of confinement at the Anchorage Correctional Complex ("ACC"), a state-run detention facility under contract with the U.S. Marshals Service to hold federal prisoners awaiting trial.[6] Defendant had been placed at ACC about a week earlier, upon his arrival in the District of Alaska to face the charges against him.[7] The Court denied Defendant's motion, finding that Defendant's conditions of confinement had not significantly impacted Defendant's ability to prepare for trial and that Defendant's complaints were not properly before the Court.[8]

On February 7, 2025, Defendant filed the instant Motion challenging his conditions of confinement at Spring Creek Correctional Complex ("SCCC"), another state-run detention facility where Defendant had been transferred in January 2024.[9] In his Motion, Defendant alleged that: (1) SCCC was improperly interfering with his attorney-client relationship by copying his legal mail outside his presence; (2) Alaska Department of Corrections ("DOC") officials had improperly seized attorney-client privileged materials from his prison cell; (3) SCCC had imposed excessive restrictions on his access to discovery and had possibly deleted some of the discovery stored in an electronic file; and (4) SCCC had disregarded his dental and vision needs and was keeping him in isolation as a punitive measure.[10] For relief, Defendant asked the Court to order the Marshals Service to "house [him] in a facility that will ensure his rights are being protected."[11] The government responded in opposition to the Motion, arguing

---

[4] Docket 4.
[5] Docket 132.
[6] Docket 95 (Case No. 3:23-cr-00051-RRB-KFR).
[7] *See* Docket 73 (Case No. 3:23-cr-00051-RRB-KFR).
[8] Docket 141 (Case No. 3:23-cr-00051-RRB-KFR).
[9] Docket 187.
[10] *Id.* at 5–15.
[11] *Id.* at 3.

that Defendant had not shown that any of his conditions of confinement unconstitutionally interfered with his Sixth Amendment right to counsel, and that the Court likely lacked jurisdiction to grant Defendant's requested relief.[12]

Defendant requested an evidentiary hearing to develop the record on the issues raised in the Motion.[13] The Court granted Defendant's request in part, limiting the scope of the hearing to: (1) the copying of Defendant's legal mail outside his presence; (2) the seizure of attorney-client privileged materials from Defendant's prison cell; and (3) Defendant's access to discovery.[14] The Court denied Defendant's request as to all other issues, explaining that the connection between those issues and Defendant's ability to exercise his trial rights was "too attenuated to be within the court's [limited] jurisdiction over his criminal case."[15]

The Court held the evidentiary hearing over the course of six non-consecutive days.[16] Defendant called 12 DOC officials as witnesses: (1) SCCC Superintendent James Milburn; (2) SCCC Administrative Superintendent Matt Stanley; (3) SCCC Lieutenant Dale Mushett; (4) SCCC Staff Sergeant Seo He Chae; (5) SCCC Staff Sergeant Jason Brown; (6) SCCC Sergeant Nick Quinn; (7) SCCC Correctional Officer ("CO") Andrew Medrano; (8) SCCC CO Jason Harvey; (9) SCCC CO Anthony Brown; (10) Sergeant David Knapp, DOC's Security Threat Group Coordinator; (11) ACC Staff Sergeant Jason Marvel; and (12) ACC CO Brandon Hill.[17]

After the hearing, the parties each submitted a post-hearing brief.[18] Defendant acknowledges in his brief that in the time since he filed the Motion, SCCC has made changes to its practices that resolve the legal mail copying and access to discovery issues.[19] Defendant contends, however, that "[t]wo interrelated issues" remain in dispute and "require this Court's

---

[12] Docket 189.

[13] Docket 191 at 4; Docket 193.

[14] Docket 194.

[15] *Id.* (quoting *United States v. Yandell*, No. 2:19-cr-00107-KJM, 2020 WL 3858599, at *8 (E.D. Cal. July 8, 2020)).

[16] Docket 287 (July 28, 2025); Docket 286 (July 29, 2025); Docket 333 (January 12, 2026); Docket 334 (January 13, 2026); Docket 337 (February 3, 2026); Docket 339 (February 26, 2026).

[17] Docket 340.

[18] Docket 358; Docket 359.

[19] Docket 358 at 3.

R&R re Conditions of Confinement
*United States v. Sanchez-Rodriguez*
3:23-cr-00090-RRB-KFR

3

intervention."[20] First, Defendant argues, SCCC staff are violating his Sixth Amendment right to counsel by "handl[ing], fan[ning] through, hold[ing] papers up to the light, and otherwise inspect[ing] [Defendant's] attorney-client correspondence and work product" during cell searches without Defendant present.[21] Second, Defendant maintains, this alleged constitutional violation is "compounded" by "the continuing failure to account for and return [his] legal materials": namely, a banker's box of documents seized from Defendant's ACC cell on January 1, 2024, an "inch of paperwork" seized from Defendant's SCCC cell on October 24, 2024, and a box of documents that Defendant brought with him when he was transported from SCCC to Anchorage for a court hearing on February 25, 2025.[22]

To remedy these alleged issues, Defendant now asks the Court to order the Marshals Service to: (1) "obtain assurance" from DOC and SCCC that in the future, materials in Defendant's cell "that are identifiable on their face as attorney-client privileged communications or work product will not be inspected, fanned, copied, or read outside his presence, and that any inspection necessary for contraband purposes will be performed only with him present and limited to the minimum intrusion required;" (2) search for and return Defendant's missing legal materials; and (3) "designate an alternative facility that will, consistent with the Sixth Amendment, treat [Defendant's] attorney-client materials in accordance with the requirements set out in this Court's order."[23]

## II. DISCUSSION

In federal criminal proceedings, trial courts generally lack jurisdiction to consider a defendant's claims if those claims relate solely to the defendant's conditions of confinement.[24] Typically, "[t]he appropriate remedy" for such claims "lies in a civil rights action," not in the underlying criminal case.[25] However, an exception to this rule exists where a defendant's

---

[20] *Id.* at 3.

[21] *Id.* at 2.

[22] *Id.*

[23] *Id.* at 12–13.

[24] *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) ("A civil rights action [pursuant to 42 U.S.C. § 1983] . . . is the proper method of challenging 'conditions of . . . confinement.'" (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 498–99 (1973))).

[25] *See Greenhill v. Lappin*, 376 F. App'x 757, 757 (9th Cir. 2010).

conditions of confinement violate their Sixth Amendment right to counsel.[26]  In such cases, the trial court has limited authority to redress claims that implicate the defendant's access to counsel or ability to prepare their defense.[27]

Because Defendant's Motion at Docket 187 set forth a colorable argument that his conditions of confinement denied him of his constitutional right to counsel, the Court allowed Defendant to develop the record on those issues that could conceivably have given rise to a Sixth Amendment violation.  But despite the ample opportunity that Defendant has had to establish a violation, he has failed to meet his burden of proof with respect to any of his claims.  Indeed, Defendant has abandoned his claims pertaining to the way in which SCCC handled his legal mail and restricted his access to discovery.[28]  And Defendant has not established that the two remaining issues—the way in which SCCC handles Defendant's allegedly privileged materials when searching his cell, and the loss of three sets of Defendant's legal materials during his time in custody—amount to a Sixth Amendment violation.

First, the record does not support Defendant's contention that the methods SCCC staff use to search Defendant's cell for contraband are unconstitutional.   As a pretrial detainee, Defendant has no constitutional right to be present during a search of his cell, even when such

---

[26] *See Falcon v. U.S. Bureau of Prisons*, 52 F.3d 137, 139 (7th Cir. 1995) (holding that if a defendant's Sixth Amendment right to counsel "is being infringed, [the district judge] has the statutory authority to protect [the defendant's] access to counsel"); *United States v. Loera*, No. CR 13-1876 JB, 2017 WL 3098257, at *27–28 (D.N.M. June 22, 2017); *United States v. Wade*, No. 3:07-cr-00111-RRB-JDR, 2009 WL 3837151, at *1 (D. Alaska Nov. 13, 2009).

[27] *See, e.g.*, *United States v. Yandell*, No. 2:19-CR-00107-KJM, 2021 WL 4777113, at *3 (E.D. Cal. Oct. 13, 2021); *United States v. Ortega*, No. 2:22-CR-00176-LK, 2025 WL 2822242, at *3 (W.D. Wash. Oct. 3, 2025); *see also United States v. Carlos Martin*, No. 2:18-CR-158-FtM-66NPM, 2020 WL 4504949, at *1 (M.D. Fla. Aug. 5, 2020) ("[T]o prevent circumvention of the obligation to exhaust administrative remedies before seeking judicial relief, and to ensure that the persons responsible for the custody and care of the defendant are properly notified and brought before the court, any complaints about the conditions of confinement that do not concern a defendant's access to counsel or the ability to prepare a defense must be pursued in a separate civil action and not by motion in the defendant's criminal case.").

[28] *See* Docket 358 at 2–3.  To the extent these issues are not moot, the evidence adduced at the evidentiary hearing does not support the notion that a Sixth Amendment violation occurred.  *See* Docket 359 at 23–26.

R&R re Conditions of Confinement
*United States v. Sanchez-Rodriguez*
3:23-cr-00090-RRB-KFR

5

a search encompasses his legal materials.[29] Moreover, Defendant has not shown that SCCC staff are impermissibly scrutinizing privileged documents when they search his cell without him there. Furthermore, Defendant has not shown that the prosecution has obtained any privileged information from DOC officials' searches of Defendant's cell.[30] To the contrary, the record demonstrates that the prosecution has taken appropriate steps to avoid intruding on Defendant's relationship with his attorneys: in the single instance when the prosecution came into possession of a folder of potentially privileged documents that had been seized from Defendant's cell, the prosecution ensured that the documents were screened by a filter team.[31] After the filter team determined the documents were privileged, the prosecution appropriately directed that the documents be returned to Defendant at SCCC.[32] Accordingly, given the absence of any evidence that the government has unlawfully intruded on Defendant's right to counsel, Defendant's Sixth Amendment claim based on how SCCC officials handle his allegedly privileged documents fails.

And second, the unclear fate of three sets of documents that Defendant alleges have not been returned to him does not constitute a Sixth Amendment violation. As an initial matter, aside from the documents in the folder that the filter team reviewed, the record does not indicate that any of these documents were privileged. The record likewise does not

[29] *See Mitchell v. Dupnik*, 75 F.3d 517, 522–23 (9th Cir. 1996) (rejecting pretrial detainee's argument that jail officials violated his constitutional rights by refusing to allow him to be present "while his cell, including his legal materials, was searched"); *Bell v. Wolfish*, 441 U.S. 520, 555–57 (1979) (holding that a pretrial detainee has no Fourth Amendment right to be present when his cell and belongings in it are searched); *Block v. Rutherford*, 468 U.S. 576, 589–91 (1984) (holding that county jail's practice of conducting "irregular or random 'shakedown' searches of the cells of [pretrial] detainees while the detainees are away at meals, recreation, or other activities" did not violate detainees' constitutional rights).

[30] *See United States v. Danielson*, 325 F.3d 1054, 1069 (9th Cir. 2003) ("[I]mproper interference by the government with the confidential relationship between a criminal defendant and his counsel violates the Sixth Amendment only if such interference 'substantially prejudices' the defendant. 'Substantial prejudice results from the introduction of evidence gained through the interference against the defendant at trial, from the prosecution's use of confidential information pertaining to defense plans and strategy, and from other actions designed to give the prosecution an unfair advantage at trial.'" (quoting *Williams v. Woodford*, 306 F.3d 665, 683, *amended*, 384 F.3d 567 (9th Cir. 2004))).

[31] Docket 359-1 at 2.

[32] *Id.* at 1.

establish what happened to the documents. Even if the Court were to assume that DOC officials negligently lost one set of documents carried by Defendant to a single hearing during the course of this prosecution, that would not permit a finding that the government interfered with Defendant's relationship with appointed counsel, or that this interference substantially prejudiced Defendant's ability to assist in his defense. The Court heard no evidence that the purported loss of documents has affected Defendant's ability to communicate with counsel. To the extent those documents consisted of discovery, that material can be reproduced. And if that material consisted of Defendant's work product, those items can be recreated. Therefore, Defendant's requested relief is unwarranted.

## III. CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's Motion to Address Conditions of Confinement at Docket 187 be **DENIED**.

DATED this 1st day of June, 2026, at Anchorage, Alaska.

*/s/ Kyle F. Reardon*
KYLE F. REARDON
United States Magistrate Judge
District of Alaska